ISAAC DWAYNE PATTERSON

v.

COMMONWEALTH OF VIRIGNIA

No. 0566-92-4

Decided February 1, 1994

COUNSEL

Jonathan Y. Short, for appellant.

Margaret Ann B. Walker, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**FITZPATRICK, J.**—Isaac Wayne Patterson (appellant) was convicted by a jury of possession with intent to distribute cocaine in violation of Code § 18.2-248. He contends that the trial court erred in: (1) denying his motion to suppress the drugs seized from him as the product of an illegal detention; and (2) allowing evidence of appellant's prior drug convictions to trigger the enhanced penalty provision of Code § 18.2-248 without prior notice. Finding no error, we affirm the conviction.

## BACKGROUND

On June 26, 1991, at approximately 1:00 a.m., Prince William County police officers executed a search warrant for drugs at 1440 Gemstone Drive, apartment 304, in Prince William County. During the search of this third floor apartment, Officer Kevin Brown (Brown) was stationed outside the entrance to secure the premises. After the police forcibly entered the apartment and while the search was in progress, Brown observed appellant and his brother, David Patterson, climbing the stairs from the second floor landing of the building. Brown advised them that they were "entering a secured area, and that

they were to leave the immediate area." Appellant and his brother did not comply with Brown's command to leave and, instead, began to question the officer about what he was doing there and what was happening inside the apartment. Brown considered their refusal to leave and continued questions "suspicious," and he "advised them to remain where they were."

Before Brown could reach the two men, Officer James Virgil (Virgil), who came out of the apartment to assist Brown with the two suspects, recognized appellant whom he had previously arrested on a drug charge. Virgil ordered the two men to put their hands on the wall and asked them whether "they ha[d] any weapons or anything on them that was illegal." Appellant again questioned what was happening in the apartment. Virgil then asked appellant, "Do you mind if I pat you down?" Appellant agreed and Virgil asked, "Do you mind if I search you down for weapons or drugs?" Appellant replied, "no, go ahead."

Virgil's search of appellant revealed a rock of crack cocaine stuffed in his front pants pocket. Appellant was placed under arrest for being in possession of suspected crack cocaine. After appellant was arrested and informed of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), appellant told the officers that he had intended to trade the cocaine for a television set. At trial, Virgil testified that during a post-arrest interview appellant explained his intentions with regard to his possession of the cocaine, as follows:

> He went into detail that he — We had stopped him on his way, he was going to bring that piece of crack cocaine down to meet a guy in the parking lot by the name of Steve and exchange this piece of crack for a T.V.

## INITIAL DETENTION — *TERRY* STOP

■ On appeal, the burden is on appellant to show that the trial court's denial of a suppression motion, when the evidence is viewed in the light most favorable to the Commonwealth, constitutes reversible error. *Fore v. Commonwealth*, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, *cert. denied*, 449 U.S. 1017 (1980); *see also Baldwin v. Commonwealth*, 243 Va. 191, 193, 413 S.E.2d 645, 646 (1992). Appellant argues that the crack cocaine seized from his pocket should have been suppressed because Brown lacked any reasonable or articulable suspicion for the original detention, asserting that his conduct of approaching the officer and asking questions was innocuous. We disagree. Appellant's refusal to leave an area secured by police officers

executing a search warrant for drugs gave Brown the reasonable suspicion necessary to investigate further why appellant failed to follow his instructions.[1]

■ In reviewing the propriety of an investigative stop the court must "review the whole picture." *Castaneda v. Commonwealth*, 7 Va. App. 574, 581, 376 S.E.2d 82, 85 (1989) (*en banc*). A trained police officer may be able to "perceive and articulate meaning to given conduct which would be wholly innocent to the untrained observer." *Iglesias v. Commonwealth*, 7 Va. App. 93, 101, 372 S.E.2d 170, 174 (1988) (citation omitted). Appellant's refusal to leave the area after being told to do so, and his subsequent questions created a high degree of risk to the officers conducting the search. "[T]he execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence . . . . The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981); *see also Allen v. Commonwealth*, 3 Va. App. 657, 662, 353 S.E.2d 162, 165 (1987). We find that appellant's behavior provided Brown with reasonable suspicion that criminal activity may have been afoot, warranting further investigation.

## CONSENSUAL SEARCH

■ Appellant also argues that even if his initial detention was justified, the Commonwealth failed to prove that his consent to search was voluntary. "All searches without a valid warrant are unreasonable unless shown to be within one of the well-delineated exceptions to the rule that a search must rest upon a valid warrant. One such exception is consent and the fact of custody alone is not enough in itself to demonstrate a coerced consent to search." *Iglesias*, 7 Va. App. at 107, 372 S.E.2d at 178 (citations omitted).

■ "It is well settled that the burden is on the Commonwealth to establish an exception to the warrant requirement." *Walls v. Commonwealth*, 2 Va. App. 639, 645, 347 S.E.2d 175, 178 (1986); *see also United States v. Jeffers*, 342 U.S. 48, 51 (1951); *Verez v. Commonwealth*, 230 Va. 405, 410-11, 337 S.E.2d 749, 752-53 (1985),

---

[1] We note that Code § 18.2-460, as in force and effect in June 1991, provided, in part:

> A. If any person without just cause knowingly obstructs . . . any law-enforcement officer in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such . . . law-enforcement officer, he shall be guilty of a Class 4 misdemeanor.

*cert. denied*, 479 U.S. 813 (1986). "In order to justify a warrantless search on the basis of consent, the Commonwealth must demonstrate from the totality of the circumstances that the consent was voluntary." *Elliotte v. Commonwealth*, 7 Va. App. 234, 238, 372 S.E.2d 416, 418 (1988).

The trial court, in denying appellant's motion to suppress, held as follows:

[I]n reference to the consent search the court will make a finding of fact, and that is that there is absolutely no evidence before this court other than the evidence that there was a consent at that particular time . . . So, when the court takes the totality of all of the evidence, that is, that you knew the officer that was involved, you've been through the procedure before, you were given the opportunity to leave and chose not to, the evidence clearly shows that at the time there was a consent to the pat down and then searched for the drugs and/or weapons.

Appellant argues that because the trial judge did not specifically state that he found that the consent to search was voluntarily given to the police, the opposite must be true and the case reversed. We disagree. The entire motion to suppress focused on the voluntary nature of the consent and whether appellant was coerced into giving his consent. On appeal, we consider the entire record in determining whether the trial court properly denied appellant's motion to suppress. *DePriest v. Commonwealth*, 4 Va. App. 577, 583, 359 S.E.2d 540, 543 (1987), *cert. denied*, 488 U.S. 985 (1988).

We agree with the Commonwealth that nothing in the record suggests that appellant was threatened or intimidated by the police. The evidence proves that when Virgil asked if he could search appellant "for weapons or drugs," appellant simply replied, "go ahead." Additional evidence was presented by the Commonwealth to prove that appellant and Virgil knew each other, and that appellant had previously consented to a search of his person. This evidence provided a sufficient basis for the trial court to find that the voluntary consent to search procedure was not new or confusing to appellant. From the record before us, we conclude that the trial court properly held that appellant voluntarily consented to the search of his person.

## ENHANCED PENALTY PROVISION OF CODE § 18.2-248

Appellant argues that the trial court erred when it permitted the prosecutor to introduce into evidence appellant's prior drug convictions without prior notice to the defense or amendment of the indictment. Our recent decisions in *Able v. Commonwealth*, 16 Va. App. 542, 431 S.E.2d 337 (1993), and *Mason v. Commonwealth*, 16 Va. App. 260, 430 S.E.2d 543 (1993), are dispositive of this question, and render appellant's challenge to his conviction on this basis without merit.

Code § 18.2-248 provides, in part:

A. Except as authorized in the Drug Control Act (§ 54.1-3400 et seq.), it shall be unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance. . . .

C. Any person who violates this section with respect to a controlled substance classified in Schedule I or II shall upon conviction be imprisoned for not less than five nor more than forty years and fined not more than $500,000. Upon a second or subsequent conviction of such a violation, any such person may, in the discretion of the court or jury imposing the sentence, be sentenced to imprisonment for life or for any period not less than five years and be fined not more than $500,000.

Appellant argues that enhanced penalty provisions of this statute "must be considered as designed first for reform" and, as such, should not be applied to convictions entered after his encounter with the police in the case at bar, because he has not had an opportunity to "participate in the reform-oriented nature of Virginia sentencing law." As we explained in *Mason*:

The purpose of the enhanced punishment provision of Code § 18.2-248(C) is to halt and punish those who repeatedly sell drugs. To construe the statute as [appellant] suggests would enable an offender to engage in a spree of drug sales over an extended period of time prior to his apprehension and to receive the status of a first offender as to each violation. Such an interpreta

tion would be contrary to the clear legislative intent and unreasonably restrictive.

*Mason,* 16 Va. App. at 263, 430 S.E.2d at 544 (citation omitted).

■ In addition, appellant contends that the indictment was defective because it failed to inform him that he was subject to the enhanced penalty provision of Code § 18.2-248(C). We disagree. There is "no requirement in Code § 18.2-248 that the indictment must state that the offense charged is a 'second or subsequent offense' to which the enhanced penalty provision may apply." *Able,* 16 Va. App. at 550, 431 S.E.2d at 341-42. We conclude that the indictment fully informed appellant of the offense with which he was charged and, because he was subject to the enhanced penalty provision, the trial court properly admitted into evidence certified copies of appellant's prior drug conviction.

For the reasons set forth above, we affirm the judgment of the trial court.

*Affirmed.*

Elder, J., and Duff, S.J.,* concurred.

---

*Judge Charles H. Duff was appointed Senior Judge effective July 1, 1993, pursuant to Code § 17-116.01:1.