COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Beales and Huff
Argued at Chesapeake, Virginia


TRACY BRIAN SHAW

MEMORANDUM OPINION[*] BY
v.      Record No. 0002-13-1              JUDGE GLEN A. HUFF
                                      DECEMBER 17, 2013
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
William R. O'Brien, Judge

Melinda R. Glaubke (Slipow, Robusto & Kellam, P.C., on briefs),
for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief) for appellee.


Tracy Brian Shaw ("appellant") appeals his conviction[1] of possession with intent to

distribute a Schedule I or II substance, in violation of Code § 18.2-248.  At a bench trial in the

Circuit Court for the City of Virginia Beach ("trial court"), appellant entered a conditional guilty

plea pursuant to Code § 19.2-254 and was sentenced to two years in the Virginia Department of

Corrections.  On appeal, appellant contends that the trial court erred in finding that the officer

had a reasonable, articulable suspicion that criminal activity was afoot and in denying

defendant's motion to suppress evidence.

For the following reasons, this Court affirms the appellant's conviction.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant also pled guilty to a misdemeanor habitual offender charge, but that is not on
appeal.

I.  BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'" Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (en banc) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)).  So viewed, the evidence is as follows.

On May 16, 2011, Virginia Beach Police Officer Brian Slomeana ("Slomeana") was on a routine patrol when he observed appellant driving a scooter on a public road.  Slomeana noticed appellant was wearing a "shiny low-profile helmet," which is sometimes "call[ed] . . . a skull cap."  Upon further observation, Slomeana believed appellant was wearing a "novelty helmet" because "it kind of hug[ged] the head" and "didn't have a sticker on the back."

Based on his "training and experience," Slomeana initiated a traffic stop because he believed appellant's helmet "was not approved by the Department of Transportation."  Slomeana testified that a Department of Transportation ("DOT") approved helmet "usually has a sticker in the rear in the center that says DOT."  Moreover, Slomeana testified that proper helmets are normally thicker and "not as low-profile to the skull.  It's kind of out a little more.  More padding between the outer helmet and the skull."  Upon examination, Slomeana discovered a label on the helmet that read, "WARNING/Novelty helmet not for use . . . On road or Off road motor vehicle!"

During the traffic stop, Slomeana also discovered that appellant was driving while a habitual offender and possessed a quantity of cocaine.  Appellant moved to suppress the evidence obtained as a result of the traffic stop, asserting Slomeana did not have a reasonable, articulable suspicion to stop him.

At the suppression hearing, appellant submitted a picture of a similar DOT approved helmet. Slomeana testified that the picture looked similar to appellant's helmet "just based off . . . the color and shape" but could not determine whether it was a "proper helmet . . . without seeing it on someone's head or in his hands."

The trial court denied the motion to suppress and stated:

> The officer testified that he believed the helmet worn by Defendant at the time of arrest to be illegal and not of the type approved by . . . Code § 46.2-910. This statute applies to motorcycles and to mopeds being driven in excess of 35 mph, while . . . Code § 46.2-915.2 applies to mopeds. Due to the technical distinctions between mopeds and motorcycles provided for in . . . Code § 46.2-100, the officer may not have known for certain the type of vehicle the Defendant was operating until the stop was executed. Therefore, if the officer erred in stopping Defendant for wearing an illegal helmet while operating a motorcycle when in reality Defendant was operating a moped, this was a reasonable mistake of fact.
>
> Under the totality of the circumstances, the officer had an objective and particularized basis for suspecting that Defendant was violating the helmet law provided for in . . . Code § 46.2-910. The officer articulated at the hearing that the appearance of the helmet combined with the officer's training and experience led him to believe that it was not a legal helmet. Therefore, the officer's investigatory stop did not violate the Fourth Amendment.

Subsequently, the trial court denied appellant's motion to reconsider the motion to suppress in light of Bennett v. Commonwealth, 60 Va. App. 656, 731 S.E.2d 40 (2012). The trial court distinguished Bennett from the matter at hand by noting Bennett concerned a challenge to the sufficiency of evidence to prove a violation of Code § 46.2-910, while the instant case concerned "merely whether [Slomeana] had a 'reasonable, articulable suspicion that criminal activity [was] afoot.' Bass v. Commonwealth, 259 Va. 470, 475-75, 525 S.E.2d 921, 921 (2000)." This appeal followed.

## II. ANALYSIS

On appeal, appellant contends that the trial court erred in finding that Slomeana had a reasonable, articulable suspicion that criminal activity was afoot and therefore erred in denying defendant's motion to suppress evidence. Specifically, appellant argues Slomeana's reasons for stopping him were insufficient. The Commonwealth asserts, however, the evidence supports the trial court's conclusion that Slomeana had reasonable suspicion to stop appellant under the totality of the circumstances.

### A. Standard of Review

On appeal, "we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense." Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999).

"On appeal, we consider the entire record in determining whether the trial court properly [ruled on] appellant's motion to suppress." Patterson v. Commonwealth, 17 Va. App. 644, 648, 440 S.E.2d 412, 415 (1994) (citing DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 543 (1987)). A question of whether "'evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal.'" Brooks v. Commonwealth, 282 Va. 90, 94, 712 S.E.2d 464, 466 (2011) (quoting Jones v. Commonwealth, 277 Va. 171, 177, 670 S.E.2d 727, 731 (2009)).

### B. Reasonable Suspicion

On appeal, appellant argues that the trial court erred in finding that Slomeana had a reasonable, articulable suspicion that criminal activity was afoot and in denying defendant's motion to suppress evidence. Specifically, appellant argues that Slomeana's belief that appellant's helmet did not meet DOT standards, the helmet did not appear to fit appellant's head

properly, and the helmet appeared to be a novelty helmet do not meet the requisite reasonable suspicion standard.

"While an arrest requires probable cause, a mere investigatory stop requires only a 'reasonable suspicion' that unlawful activity 'may be afoot.'" Shifflett v. Commonwealth, 58 Va. App. 732, 735, 716 S.E.2d 132, 134 (2011) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). A reasonable suspicion is more than an "unparticularized suspicion or 'hunch.'" Terry v. Ohio, 392 U.S. 1, 27 (1968). "This degree of certitude required is 'considerably less than . . . a preponderance of the evidence, and obviously *less* demanding than that for probable cause.'" Shifflett, 58 Va. App. at 736, 716 S.E.2d at 134 (quoting Perry v. Commonwealth, 280 Va. 572, 581, 701 S.E.2d 431, 436 (2010) (emphasis added)). Additionally, reasonable suspicion "requires at least a minimal level of objective justification for making the stop." Bass, 259 Va. at 475, 525 S.E.2d at 923 (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

"There is no 'litmus test' for reasonable suspicion. Each instance of police conduct must be judged for reasonableness in light of the particular circumstances." Harmon v. Commonwealth, 15 Va. App. 440, 445, 425 S.E.2d 77, 79 (1992) (quotation marks and citations omitted). On the other hand, "[t]he court must consider the totality of the circumstances in determining whether a police officer had a particularized and objective basis for suspecting that a person stopped may be involved in criminal activity." Bass, 259 Va. at 475, 525 S.E.2d at 924 (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Specifically, the totality of the circumstances must be viewed "objectively through the eyes of a reasonable police officer with the knowledge, training and experience of the investigating officer." Jones v. Commonwealth, 52 Va. App. 548, 560, 665 S.E.2d 261, 267 (2008).

Lastly, "reasonableness is judged from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's intent or

motivation." Scott v. Commonwealth, 20 Va. App. 725, 727, 460 S.E.2d 610, 612 (1995) (citations omitted). Therefore, "[i]f the detention was objectively reasonable, the Fourth Amendment authorizes the action, 'whatever the subjective intent' motivating the officer." Shifflett, 58 Va. App. at 736 n.2, 716 S.E.2d at 135 n.2.

Appellant argues that he did not violate any traffic law because Code § 46.2-910[2] does not require persons on motorcycles to wear a DOT approved helmet and is not applicable to mopeds. The issue in this matter, however, is not whether appellant violated any traffic law but whether Slomeana had reasonable suspicion in stopping appellant. Therefore, the proper inquiry is whether Slomeana had a reasonable, articulable suspicion under the totality of the circumstances.

In the case at hand, Slomeana testified that "through his experience and training," he believed the helmet was not approved by DOT. He also stated that the appellant wore a "shiny low-profile" helmet, known as a "skull cap," which he recognized from his experience. Lastly, Slomeana testified that he believed appellant was actually wearing a novelty helmet because of the way it hugged his head and did not have a sticker on the back. These facts alone suggest Slomeana had a "particularized and objective basis" for stopping appellant. Moreover, Slomeana

---

[2] The Code in relevant part states:

> [e]very person operating a motorcycle shall wear a face shield, safety glasses or goggles, or have his motorcycle equipped with safety glass or windshield at all times while operating the vehicle, and operators and any passengers thereon shall wear protective helmets . . . . The windshields, face shields, glasses or goggles, and protective helmets required by this section shall meet or exceed the standards and specifications of the Snell, Memorial Foundation, the American National Standards Institute, Inc., or the federal Department of Transportation.

Code § 46.2-910(A).

based his suspicion on his "training and experience" as a police officer in the City of Virginia Beach.

Appellant argues that because Code § 46.2-910 does not require motorcycle helmets to be approved by DOT[3] and marked or labeled in accordance with any safety standard, Slomeana could not have had a reasonable suspicion that appellant was violating the law. Appellant relies on Bass, 259 Va. at 477, 525 S.E.2d at 925, wherein the Supreme Court found that the defendant's driving maneuvers did not constitute a violation of the Code and, therefore, could not rise to reasonable suspicion. In Bass, the Court rejected the Commonwealth's argument that even if defendant did not violate the Code, his actions were sufficient to give rise to the officer's reasonable suspicion. Id.

In this matter, however, the absence of the DOT sticker was merely one of multiple factors that Slomeana considered based on his training and experience to determine that the helmet violated the Code. Furthermore, unlike the defendant in Bass, appellant was in violation of the Code because he was using a novelty helmet. Moreover, Slomeana's awareness of the Snell Memorial Foundation ("Snell") and American National Standards Institute, Inc. ("ANSII") standards are irrelevant to the analysis in this matter.[4] The reasonable suspicion analysis focuses on the officer's objective intent, therefore, Slomeana's reasoning, supported by his training and experience, that appellant's helmet did not appear to comply with DOT standards is sufficient.

_____

[3] Under Code § 46.2-910, helmets "*shall* meet or exceed the standards and specifications of the Snell Memorial Foundation, the American National Standards Institute, Inc., *or* the federal Department of Transportation." (Emphasis added)

[4] Appellant also relies on expert testimony referenced in the Bennett opinion discussing the Snell and ANSII standards. 60 Va. App. at 664, 731 S.E.2d at 44. Appellant appears to rely on these experts to suggest that Slomeana could not have determined whether the helmet met the standards by merely looking at the helmet from a distance. These experts, however, did not testify in the current matter and in any event would not change the objective observations made by Slomeana which provided the basis for the traffic stop.

Lastly, appellant relies on <u>Commonwealth v. Snyder</u>, No. 0234-07-2, 2007 Va. App. LEXIS 307 (Va. Ct. App. Aug. 14, 2007), in arguing that Slomeana had a mistaken understanding of law that could not give rise to reasonable suspicion. In <u>Snyder</u>, a police officer stopped defendant for a broken passenger's side mirror, which the officer mistakenly believed to be a violation of Code § 46.2-1003. In upholding the trial court's ruling for the defendant, this Court held "'a belief based on a mistaken understanding of law cannot constitute the reasonable suspicion required for a constitutional traffic stop.'" <u>Id.</u> at *14 (quoting <u>United States v. Twilley</u>, 222 F.3d 1092, 1096 (9th Cir. 2000)).

This Court's ruling in <u>Snyder</u>, however, is distinguishable from the matter at hand. In this case, a helmet that does not comply with DOT, Snell, or ANSII standards *is* a violation of Code § 46.2-910. Furthermore, appellant was charged in violation of Code § 46.2-910, after Slomeana inspected the helmet. Moreover, the missing DOT sticker was merely one of multiple circumstances that aroused Slomeana's suspicion. For example, the shape of the helmet, the lack of padding, and the way it hugged appellant's head all contributed to Slomeana's suspicion that appellant had violated the Code. All of these circumstances provided Slomeana with a "particularized and objective basis" for suspecting appellant had violated Code § 46.2-910. Therefore, appellant's arguments fail.

## III. CONCLUSION

Based on the foregoing, this Court finds that the trial court did not err in holding that Slomeana had a reasonable, articulable suspicion that criminal activity was afoot and therefore the trial court did not err in denying defendant's motion to suppress evidence. Accordingly, the trial court's judgment is affirmed.

<u>Affirmed.</u>